**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

THOMAS C. INDELICARTO and )
JACQUELINE M. INDELICARTO, )
                                    )      Civil Action No. 2:25-cv-0443
           Plaintiffs, )
                                      )      Magistrate Judge Patricia L. Dodge
                v. )
                                        )
LAUREL POND CONDOMINIUM )
ASSOCIATION, F. CHRISTOPHER )
SPINA, and MICHAEL GEORGE, )
                                      )
           Defendants. )

**MEMORANDUM OPINION**[1]

        Plaintiffs Thomas and Jacqueline Indelicarto (collectively, the "Indelicartos") bring this civil action against Defendants Laurel Pond Condominium Association (the "Association"), F. Christopher Spina ("Spina"), and Michael George ("George") (collectively "Defendants"). Their claims arise from damage to two units owned by the Indelicartos in the Laurel Pond Condominium.

        Pending before the Court is Defendants' partial Motion to Dismiss (ECF No. 18). For the following reasons, the motion will be denied.

**I.**    **Procedural History**

        The Indelicartos filed their Complaint on April 1, 2025. The Complaint alleges breach of contract claims for water damages (Count I), inferior water pipes (Count II), and structural deficiencies (Count III) against the Association; breach of fiduciary duties against Spina and George (Count IV); and trespass against all Defendants (Count V). They also seek declaratory relief against the Association regarding the control of repair work (Count VI) and right of access

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case. The undersigned therefore has authority to decide dispositive motions and enter final judgment.

(VII). *See* ECF No. 1.

Defendants moved to dismiss only Counts IV and V. (ECF No. 18.) The motion has been fully briefed (ECF Nos. 20, 25), and is now ready for disposition.

## II. **Facts Alleged in the Complaint**

Laurel Pond Condominium (the "Condominium") is located in the Nemacolin Woodlands Resort. It consists of nine buildings, each divided into four units. (*Id.* ¶¶ 8, 10.) The Condominium was established by written declaration in September 1983 (the "Declaration"). The Declaration governs operation of the Association, a Pennsylvania nonprofit corporation formed pursuant to the Pennsylvania Uniform Condominium Act, 68 Pa. Cons. Stat. §§ 3101-3414 ("PUCA"). (*Id.* ¶¶ 3, 14-19.) Spina is president of the Association and both he and George are members of the Association's executive board of directors. (*Id.* ¶¶ 3-5.)

The Declaration defines the boundaries of the individual condominium units and assigns the Association certain responsibilities regarding maintenance of the Condominium's common areas. (*Id.* ¶¶ 16-19.) The Association also adopted Rules and Regulations (the "Rules") that further delineate the rights, duties, and obligations of the Association and unit owners. (*Id.* ¶ 22.) Relevant here, the Rules contain the following provisions:

> The interiors of the units are the property of the Unit Owners and, as such, they are not to be subjected to unnecessary or inappropriate interference from the Association except as it may impact the safety, security, or well–being of other Unit Owners. In cases relating to the repair, maintenance, or construction for which the Board is responsible, reasonable exercise of entry is an appropriate and irrevocable right.

(ECF No. 1-3 § C.1.)

> By authority of the Board of Directors, the Nemacolin Woodlands Resort Security shall retain a pass key and/or entrance code for each unit for use in an emergency or for an entrance directed by the Board of Directors which relates to the safety and

well–being of all.

(*Id.* § D.2.)

> In order to minimize damage to their own as well as adjoining units and common areas, during winter months each unit must be maintained at a minimum temperature of no less than 55 degrees Fahrenheit. In addition, Unit Owners are strongly encouraged to take reasonable care related to the safety of their unit's individual appliances as well as their heating, electrical and other operating systems.

(*Id.* § C.5.)

The Indelicartos purchased two adjoining first and second story condominium units (the "Units") in September 2021. (ECF No. ¶ 2.) The Units were primarily used as a vacation property and were often unoccupied for long periods of time. (*Id.* ¶ 9.) The Indelicartos always winterized the Units by shutting off the water and putting antifreeze in the toilets before leaving. (*Id.* ¶ 31.)

On December 30, 2024, Spina emailed all Condominium unit owners that National Pike Water Authority ("National Pike") had informed the Association of a potential underground water leak. (*Id.* ¶ 28.) Although the Units were unoccupied, the Indelicartos were not concerned about leaks because the Units had been winterized in accordance with the Rules. (*Id.* ¶¶ 30-31.)

The next day, Spina emailed all unit owners that a leak detection company retained by the Association was on site searching for the leak. (*Id.* ¶ 32.) The Association hired two contractors, MountainCreek and KEC, to perform work at the Condominium. MountainCreek was owned and operated by George's brother.[2] (*Id.* ¶¶ 42-43.)

On January 7, 2025, George informed unit owners that the leak detection company would

---

[2] According to the Complaint, MountainCreek's website "states that it provides asphalt sealcoating, road painting, and line striping services for roads and parking lots. Nothing on the website suggests that MountainCreek has expertise in the leak detection or the repair/replacement of underground water pipes." (*Id.* ¶ 44.)

be back again the next day. He advised that the company would be shutting off water in all the units while air was run through the water lines to detect the leak's location. Spina stated that Nemacolin security would be present during this process and that water would be restored by the end of the business day. (*Id.* ¶¶ 33-34.) According to the Complaint, there is no record of Nemacolin's security department providing the leak detection company access to the Units on January 8, 2025. (*Id.* ¶ 35.)

On January 17, 2025, West Penn Power was called to the Condominium after the owners of a different unit informed Spina that they had lost power. (*Id.* ¶¶ 45-46.) West Penn Power restored power to the other owner's unit but was unaware that the Indelicartos' property had also lost power. (*Id.* ¶ 47.) Although unknown at the time, MountainCreek and/or KEC had severed both the waterline and underground electrical lines leading to the Indelicartos' property sometime between January 13 and 17, 2025. (*Id.* ¶ 49.)

Spina emailed unit owners again on January 22, 2025 to advise that National Pike intended to shut off all water to the Condominium from 9:30 a.m. to 3:30 p.m. on January 23 to fix a water mainline leak. (*Id.* ¶ 37.) National Pike has since advised that it did not shut off the Condominium's water on January 23. The Complaint therefore alleges that the statements in Spina's email were knowingly false. (*Id.* ¶ 38.)

On January 31, 2025, Spina informed the Indelicartos that the Units had flooded due to a broken pipe in their second-floor shower. Spina stated that large amounts of water damaged the Units along with the other unit in the building. He also advised that the Association's contractor had entered the Units to shut off the main water valve. (*Id.* ¶¶ 40-41.)

The Indelicartos subsequently learned that plumbing work had been performed inside neighboring units on January 23 and 24, 2025. (*Id.* ¶¶ 55-56.) The Indelicartos' property shows evidence of similar work. (*Id.* ¶¶ 57-63.) Additionally, Nemacolin's security department confirmed that it provided access to the Units on January 13, 2025. The Association did not notify the Indelicartos that contractors would be entering the Units on January 13 and it has never explained what was done inside the Units on that day. (*Id.* ¶¶ 35-35.) The Complaint therefore alleges that Spina and George allowed contractors to enter the Units on multiple occasions without notifying the Indelicartos, obtaining consent, or informing Nemacolin security.

## III.    Legal Standard

A Rule 12(b)(1) motion to dismiss addresses "the very power [of the court] to hear the case." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). "As the party asserting jurisdiction, [the plaintiff] bears the burden of showing that its claims are properly before the district court." *Dev. Fin. Corp. v. Alpha Hous. & Health Care, Inc.*, 54 F.3d 156, 158 (3d Cir. 1995). "A challenge to subject matter jurisdiction under Rule 12(b)(1) may be either a facial or factual attack." *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). A facial challenge is made without "disputing the facts alleged in the complaint, and it requires the court to 'consider the allegations of the complaint as true.'" *Id.* (quoting *Mortensen v. First Fed. Sav. & Laon Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).

A complaint may also be dismissed, in whole or in part, for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To overcome a 12(b)(6) motion, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To decide a Rule 12(b)(6) motion, the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). While "accept[ing] all of the complaint's well-pleaded facts as true," the court "may disregard any legal conclusions." *Id.* at 210-11. "Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). The court will generally consider only the complaint, exhibits attached thereto, and matters of public record. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

In assessing the sufficiency of a complaint, a court must therefore: (1) outline the elements the plaintiff must plead to state a claim for relief; (2) peel away any conclusory allegations that are not entitled to the assumption of truth; and (3) look for well-pled factual allegations, assume their veracity, and determine whether they plausibly give rise to an entitlement to relief. *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). This plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 US at 679.

IV.   **Discussion**

A.   **Applicability of Pennsylvania Law**

Because this is a diversity action, the Court applies Pennsylvania law regarding the substance of the claim. As stated by the Court of Appeals:

> In adjudicating a case under state law, we are not free to impose our own view of what state law should be; rather, we are to apply state law as interpreted by the state's highest court in an effort to predict how that court would decide the precise legal issues before us. *Kowalsky v. Long Beach Twp.*, 72 F.3d 385, 388 (3d Cir. 1995); *McKenna v. Pacific Rail Serv.*, 32 F.3d 820, 825 (3d Cir. 1994). In the absence of guidance from the state's highest court, we are to consider decisions of the state's intermediate appellate courts for assistance in predicting how the state's highest court would rule. McKenna, 32 F.3d at 825; *Rolick v. Collins Pine Co.*, 925 F.2d 661, 664 (3d Cir. 1991) (in predicting state law, we cannot disregard the decision of an intermediate appellate court unless we are convinced that the state's highest court would decide otherwise).

*Gares v. Willingboro Twp.*, 90 F.3d 720, 725 (3d Cir. 1996).

If a state supreme court has not addressed the issue, "the federal court must ascertain from all available data, including the decisional law of the state's lower courts, restatements of law, law review commentaries, and decisions from other jurisdictions on the 'majority' rule, what the state's highest court would decide if faced with the issue." *Gruber v. Owens-Illinois Inc.*, 899 F.2d 1366, 1369 (3d Cir. 1990) (citation omitted). Thus:

> To predict the response which we believe the Pennsylvania Supreme Court would give to the question before us, we examine: (1) what the Pennsylvania Supreme Court has said in related areas; (2) the "decisional law" of the Pennsylvania intermediate courts; (3) federal appeals and district court cases interpreting the state law; (4) decisions from other jurisdictions that have discussed the issue we face here.

*Id.* at 1369-70.

B.   **Standing to Assert Breach of Fiduciary Claims**

Count IV alleges Spina and George breached their fiduciary duties under § 3303(a) of the

7

PUCA. Defendants argue that the Indelicartos lack standing to sue individual board members or officers because the fiduciary duties under § 3303(a) are owed to the Association, not individual unit owners. (ECF No. 20 at 7.)

Section 3303(a) provides, in relevant part:

> In the performance of their duties, the officers and members of the executive board shall stand in a fiduciary relation to the association and shall perform their duties, including duties as members of any committee of the board upon which they may serve, in good faith in a manner they reasonably believe to be in the best interests of the association and with such care, including reasonable inquiry, skill and diligence, as a person of ordinary prudence would use under similar circumstances.

68 Pa. Cons. Stat. § 3303(a).

Defendants cite two related Pennsylvania Commonwealth Court cases to support their position. *See Cooley v. Lofts at 1234 Condo. Ass'n*, 2017 WL 894353 (Pa. C.P. Phila. Cty. Mar. 1, 2017), *aff'd*, 2020 WL 1231394 (Pa. Commw. Ct. Mar. 13, 2020); *Dana v. Lofts at 1234 Condo. Ass'n*, 2020 WL 1188460 (Pa. Commw. Ct. Mar. 12, 2020). Interestingly, the Indelicartos rely on the same cases to support their own position contrary to Defendants'.

In both cases, the Commonwealth Court affirmed a trial court's dismissal of the plaintiff's individual PUCA claims for lack of standing where the plaintiff failed to allege damages unique to him "that were not derivative of those sustained by the Association as a whole." *Cooley*, 2020 WL 1188460, at *8. Explaining the rationale behind its decision, the court stated:

> Furthermore, in support of his PUCA cause of action, Mr. Dana did not allege damages unique to him that were not derivative of those sustained by the Association as a whole. It is well settled that
>
>> under established Pennsylvania law, a shareholder does not have standing to institute a direct suit for "a harm [that is] peculiar to the corporation and [that is] only ... indirectly injurious to [the] shareholder." *Reifsnyder v. Pgh. Outdoor Adver. Co.*, 405 Pa. 142, 173 A.2d 319, 321 (1961). Rather, such a claim belongs to, and is an asset of, the corporation.

> To have standing to sue individually, the shareholder must allege a direct, personal injury—that is independent of any injury to the corporation—and the shareholder must be entitled to receive the benefit of any recovery.

> Hill v. Ofalt, 85 A.3d 540, 548 (Pa. Super. 2014) (emphasis added).

> In Count I of the Fourth Amended Complaint (intentional violations of PUCA) against Mr. Marrone and Ms. Volla, Mr. Dana averred generally that he was "adversely affected and damaged" by Mr. Marrone's and Ms. Volla's actions, without specifying *how* he was individually harmed. Count I merely contains broad averments regarding Mr. Marrone's and Ms. Volla's alleged misappropriation of Association dues and insurance proceeds and imposition of special assessments on the Association's members, damages which would have been sustained by the entire Association. *See Kehr Packages, Inc. v. Fidelity Bank, Nat'l Ass'n*, 710 A.2d 1169, 1176 (Pa. Super. 1998) ("[W]here the gravamen of a claim is injury to a corporation, the shareholders of the corporation may not claim injury to themselves rather than the corporation."); *see also Hill*, 85 A.3d at 550 (dismissing a shareholder's individual claims against an executive board member, where the shareholder "never alleged that [the board member] breached a contractual or fiduciary duty *owed to [the shareholder] individually*") (emphasis added).

> Therefore, we conclude that the Trial Court properly dismissed Mr. Dana's PUCA claims against Mr. Marrone and Ms. Volla, individually, for lack of standing.

*Dana*, 2020 WL 1188460, at *7-8.

The Commonwealth Court further distinguished *Cooley* and *Dana* from another case in which a plaintiff unit owner brought action against a condominium association and its executive board for property damage due to the specific language used in the declaration. *See Cooley*, 2020 WL 1231394, at *7; *Dana*, 2020 WL 1188460, at *7 (discussing *Falini v. Brinton Square Condo. Ass'n*, 676 C.D. 2015 (Pa. Commw. Ct. Feb. 1, 2016)). The court explained:

> However, unlike the Declaration in this case, the condominium declaration in *Falini* expressly permitted individual tort actions against the executive board members, stating that "board members can be held *personally liable 'in tort to a unit owner . . . for the . . . board members' own willful misconduct or gross negligence in the performance of their duties.'"*

*Id.* (quoting *Falini*, 676 C.D. 2015, at *6) (citation modified).

9

Thus, although the Commonwealth Court did indeed find the *Cooley* and *Dana* plaintiffs lacked standing under § 3303(a), it does not appear that the court created a bright line rule barring unit owners from bringing direct claims for breach of fiduciary duty against individual board members. Instead, it appears that a future plaintiff could have standing if the declaration expressly authorizes individual tort action against board members, and the plaintiff alleged a direct, personal injury separate from any derivative harm to the association.

Here, the Association's Declaration expressly states that executive board members:

> Shall have no personal liability in tort to a Unit Owner or any other person or entity, direct or imputed, by virtue of acts performed by or for them, except for the Executive Board members' own willful misconduct or gross negligence in the performance of their duties; . . . .

(ECF No. 1-2 § XI.E.) Under Pennsylvania law, a claim for breach of fiduciary duty sounds in tort. *See, e.g.*, *Drain v. Covenant Life Ins. Co.*, 551 Pa. 570, 572, 712 A.2d 273, 278 (Pa. 1998) (characterizing breach of fiduciary duty claim as a tort claim); *Laurel Rd. Homeowners Ass'n v. Freas*, 191 A.3d 938, 949 (Pa. Commw. Ct. July 26, 2018) ("However, a claim for breach of fiduciary duty sounds in tort[.]").

The Indelicartos argue that they "have pled the very facts which the *Cooley* and *Dana* courts concluded would permit unit owners to pursue a breach of fiduciary duty claim." (ECF No. 25 at 6.) The Complaint alleges specifically that Spina and George breached their fiduciary duties by: knowingly hiring an inexperienced contractor to perform leak detection; falsely advising unit owners that the Association's contractor would be supervised by Nemacolin while performing work inside the Units; directing the Association's contractors to work inside the Units when fixing an external water line without first notifying the Indelicartos and obtaining consent to enter; failing to notify the Indelicartos that the Units were without power; providing false and misleading

information concerning the number of times contractors entered the Units and the reason for entrance; and providing false information that National Pike was shutting off water to the Condominium. *See* ECF No. 1. The Complaint therefore sufficiently alleges willful misconduct on the parts of Spina and George.

Thus, unlike the plaintiffs in *Cooley* and *Dana*, the Indelicartos allege direct, individualized damage to their units and cite a condominium declaration provision that permits liability for willful misconduct or gross negligence. These allegations are sufficient to establish standing at this early stage of litigation. Accordingly, Defendants' motion will be denied as to Count IV.

## C. Trespass

Defendants also seek dismissal of Count V, arguing that the Declaration grants an irrevocable right of entry, thereby precluding any trespass claim. Under Pennsylvania law, trespass is defined as "an 'unprivileged, intentional intrusion upon land in possession of another.'" *Boring v. Google Inc.*, 362 F. App'x 273, 280 (3d Cir. 2010) (citing *Graham Oil Co. v. BP Oil Co.*, 885 F. Supp. 716, 725 (W.D. Pa. 1994)). Pursuant to Section 158 of the Second Restatement, an individual who "intentionally enters land in the possession of another or causes a thing or a third person to do so, remains on the land, or fails to remove a thing which one is under a duty to remove" is liable for trespass. Restatement (Second) of Torts § 158.

The Indelicartos plausibly allege that Defendants entered the Units without consent and for an improper purpose on multiple occasions throughout January 2025. Although Defendants argue that each entry was privileged, the scope and reasonableness of Defendants' entry rights are fact-intensive inquiries. Because the Court cannot conclude at this early stage that Defendants' entry was privileged as a matter of law, Defendants' motion will be denied as to Count V.

## V.    <u>**Conclusion**</u>

For these reasons, Defendants' Motion to Dismiss (ECF No. 18) is denied as to Counts IV

and V.

An appropriate order will follow.


Dated:  March 6, 2026                         <u>/s/ Patricia L. Dodge</u>
                                              PATRICIA L. DODGE
                                              United States Magistrate Judge